***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission adopts with minor modifications the Opinion and Award of the Deputy Commissioner.
 *********** MOTION
Plaintiff's Motion to Dismiss, filed on 2 June 2003 on grounds that defendants failed to timely file a Form 44 Application for Review or a brief to the Full Commission is hereby DENIED in the discretion of the Full Commission.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit # 1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer on 5 November 2000.
3. Insolvent Credit General is succeeded in interest by the North Carolina Insurance Guaranty Association, who is the party at risk.
4. Plaintiff's average weekly wage has been raised as an issue.
5. Plaintiff's medicals are admitted into evidence as Stipulated Exhibit # 2.
The following Industrial Commission Forms and Orders are admitted into
evidence as Stipulated Exhibit # 3:19; Form 24 (dated 15 February 2001); Form 24 (dated 27 July 2001); 28B (dated 23 August 2001); Special Deputy Cammarano's 6 April 2001 Order Disapproving the 15 February 2001 Form 24; and Special Deputy Commissioner Maddox's 20 August 2001 Order Approving Termination of Compensation effective 25 June 2001.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. On 5 November 2000, plaintiff was a 43 year old female employed by defendant-employer as a long distance truck driver. Plaintiff was paired with her fiancé, Richard Meeks. The route involved hauling loads from North Carolina to California.
2. On 5 November 2000, plaintiff and Mr. Meeks were on their first trip for defendant-employer when they were involved in a motor vehicle accident in Arizona. The accident occurred when Mr. Meeks' truck hit a car, causing the tractor-trailer to roll over. At the time of the accident plaintiff was in the sleeping compartment.
3. After the accident, plaintiff sought treatment at Kingman Regional Medical Center in Arizona. Plaintiff complained of only minor pain and she was treated and released.
4. After release from the emergency room, plaintiff returned to her home in Wilson, North Carolina. Plaintiff sought medical treatment at Wilson Intermediate Care on 13 November 2000. At this time plaintiff complained of severe pain in the chest and rib cage, dizziness, bilateral knee pain, foot drop, neck, back and hip pain. Plaintiff was diagnosed with musculoskeletal pains and strains. Plaintiff was treated with flexeril, Tylenol and prescribed physical therapy.
5. Beginning on 10 November 2000, defendants began paying plaintiff temporary total disability compensation at the weekly rate of $369.25 until a Form 24 Application to Terminate or Suspend Payment of Compensation was approved 25 June 2001. Defendants never filed a formal admission or denial of liability.
6. Plaintiff was referred to Dr. Robert Appert, an orthopaedist. Plaintiff presented to Dr. Appert on five occasions, beginning on 21 December 2000. Although plaintiff's initial x-rays did not reveal broken ribs, Dr. Appert suspected broken ribs due to his clinical examination. X-rays later revealed healed fractures of the sixth and seventh ribs. It is not unusual for rib fractures to initially fail to show up on x-rays and instead show up later when healed. Due to plaintiff's cervical spine complaints, a cervical MRI was performed. The MRI was essentially normal.
7. On 15 January 2001, Dr. Appert released plaintiff to return to work at her regular job as a truck driver, with no physical restrictions in her returning to work.
8. Due to continuing pain, after plaintiff was released to return to work by Dr. Appert, she sought treatment on 10 March 2001 at the emergency room at Pitt County Memorial Hospital. X-rays performed there revealed the old rib fractures. Plaintiff was referred to East Carolina Medical Center.
9. Plaintiff's first evaluation at East Carolina Medical Center was with Dr. Merchant on 9 April 2001. At that time plaintiff's complaint was that she hurt all over. Plaintiff did not complain of depression or anxiety. Plaintiff was diagnosed with fibromyalgia due to complaints of multiple tender points and diffuse pain. Plaintiff was referred for a neurologic work-up.
10. In May 2001, plaintiff saw Dr. J. Ross Shuping with East Carolina Neurology. Her chief complaints at that time were back pain, leg pain, leg problem, right leg problem, knee problem and neck problem. Dr. Shuping ordered further tests and placed no restrictions on her working.
11. Nerve conduction studies revealed no evidence of a focal entrapment neuropathy, no evidence to suggest the presence of a large fiber polyneuropathy, and no evidence on needle examination of radiculopathy or plexopathy affecting the right or left leg.
12. Plaintiff's lumbar MRI was essentially normal with only very minimal degenerative character present at L4-5. The cervical MRI revealed congenital fusion of C2 and C3, and osseous and degenerative disc disease at C5-6 with small endplate osteophytes, central C5-6 disk bulge, and ligamenta flava at the upper range of normal caliber. There is no evidence for myelopathy or specific nerve root impingement.
13. In June and August 2001 Dr. Shuping noted plaintiff's injuries were soft tissue involving contusions and strains. There was no objective cause for a "foot drop", which plaintiff began complaining of during the summer of 2001.
14. At the hearing before the Deputy Commissioner, plaintiff demonstrated severe physical limitations during testimony. These descriptions were not accepted by the Deputy Commissioner as completely credible since plaintiff was much worse physically "during" testimony than other times, such as when walking down the hallway and exiting the building. The Full Commission affirms the credibility findings of the Deputy Commissioner. All of plaintiff's tests have been within normal limits and do not support plaintiff's subjective complaints of pain. Both Dr. Appert and Dr. Shuping released plaintiff to return to work without restrictions.
15. Plaintiff sought treatment from a psychiatrist and received an evaluation in October 2001 from Dr. Shannon Tyler, Associate Professor of Psychiatric Medicine at East Carolina University. She also received counseling from a resident at East Carolina University School of Medicine. Plaintiff complained of stress in various everyday activities, filing in forms, and physical pain. However, there is insufficient evidence and no opinions from the psychiatrists to support a causal connection between any mental problems plaintiff may have and the truck accident.
16. The greater weight of the evidence is that at the very latest, plaintiff had reached maximum medical improvement by the time she saw Dr. Shuping on 4 June 2001. Also, at that time plaintiff was able to return to work without restrictions. Although plaintiff again sought treatment in August 2001, earlier tests had already addressed those complaints and provided no objective basis for their origin.
17. The greater weight of the medical evidence is that plaintiff does not suffer from any permanent disability as a result of the vehicular accident of 5 November 2000.
18. Plaintiff was paid temporary total disability compensation at a weekly rate of $369.25. This amount was set by defendants without a Form 22 or any explanation as to how the figure was determined. Plaintiff had just started working with defendants on the date of injury. Plaintiff was to receive $800.00 per run from Raleigh to California out of season and $900.00 for each in season run. The agreement was to run three to four trips per month. This yields an approximate salary of $2,400.00 to $3,600.00 per month. No other evidence concerning wages was introduced. In order to be more fair to the parties, plaintiff's wage was $3,000.00 per month which equals $36,000.00 per year. When divided by 52 weeks, plaintiff's average weekly wage was $692.31. This yields a compensation rate of $461.56 per week. There is a $92.31 difference between what defendants have paid since the accident and what is a fair and just amount between the parties. Defendants provided no documentation to support the compensation rate of $369.95.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 5 November 2000 plaintiff suffered a compensable accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. It is more fair and just to both parties for plaintiff's average weekly wage to be determined based on an average of three to four trips per month at the rate of $800.00 to $900.00 per run, which yields an average weekly wage of $692.31, and a compensation rate of $461.56 per week. N.C. Gen. Stat. § 97-2(5).
3. As a result of her compensable accident, plaintiff is entitled to temporary total disability at the compensation rate of $461.56 from 5 November 2000 through 4 June 2001. Defendants are entitled to a credit for compensation already paid to plaintiff. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendants pay all medical expenses incurred as a result of her compensable accident for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff's period of disability. This does not include any psychiatric treatment or counseling. N.C. Gen. Stat. § 97-25.
5. The greater weight of the evidence is plaintiff does not suffer from any permanent disability as a result of the 5 November 2000 accident. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay to plaintiff temporary total disability benefits at her compensation rate of $461.56 per week from 5 November 2000 through 4 June 2001. Defendants shall receive a credit for those amounts already paid. These amounts have accrued and are payable in a lump sum.
2. A reasonable attorney's fee of 25% of the compensation awarded plaintiff in Paragraph 1 of this AWARD is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of her compensable injury on 5 November 2000 when bills for same shall have been submitted to the Industrial Commission according to approved Industrial Commission procedure. This does not include bills for psychiatric treatment or counseling.
4. Defendants shall pay the costs.
This the ___ day of August, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER